UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-20490-CIV-HUCK/BANDSTRA

TRENISE ASHLEY,

    Plaintiff,

v.

CITY OF HIALEAH and ISIDRO REYES,

    Defendants.
_____/

## ORDER

Plaintiff Trenise Ashley is suing Defendants City of Hialeah and Isidro Reyes on claims arising out of Reyes' arrest of Ashley on May 13, 2009. In Count IV of the Complaint, Ashley alleges a federal cause of action against Hialeah for negligent hiring and retention pursuant to 42 U.S.C. § 1983. Additionally, Ashley alleges state law claims against Hialeah comprising false arrest (Count III), negligent hiring and retention (Count V), and negligent excessive and unreasonable force during arrest (Count VI). Defendant Hialeah moves to dismiss Ashley's claims against it, arguing that Ashley fails to state a claim upon which relief can be granted. For the reasons discussed below, the Court denies Hialeah's Motion as to Counts III, IV, and V, and grants the Motion as to Count VI.

**I.    RELEVANT FACTS**

Defendant Isidro Reyes is a former employee—a police officer—of Defendant Hialeah. During May 2009, while he was off-duty from his employment with Hialeah, Reyes also was employed as a security officer by Palmetto General Hospital ("Hospital"), which is located in Hialeah, Florida. Plaintiff Trenise Ashley worked at the Hospital as the unit secretary on the Hospital's sixth floor.

1

On May 13, 2009, after regular visiting hours had ended, a family member who was visiting a patient on the sixth floor asked Ashley whether additional family members could visit. Ashley sought and obtained permission from her supervisor for the additional persons to visit. Before retrieving the visiting family, Ashley telephoned a security officer and informed him that she would escort the guests to the sixth floor.[1] Next, Ashley went to the lobby and identified herself to a security officer.[2] Ashley met the visiting family in the lobby and accompanied them to the elevator. At the elevator, Ashley alleges that Reyes—whom Ashley does not allege was the security officer she previously spoke to—"accosted" and "chastised" her for not obtaining his approval to escort the visitors upstairs, then "threatened to arrest her for discourtesy." Ashley allegedly told Reyes that he was acting rudely.

Ashley accompanied the visitors onto the elevator and up to the sixth floor. There, she recounted to her superiors the details of the encounter with Reyes. Ashley then returned to the lobby to obtain Reyes' name and badge number. When Ashley approached Reyes in the lobby and asked for this information, Reyes allegedly demanded to speak with Ashley's supervisor. Reyes and Ashley took the elevator to the sixth floor. Ashley alleges that upon arriving on the sixth floor, she told her superiors and the visiting family members who initially had accompanied her to the lobby that Reyes was the "disrespectful officer" whom she previously described. Standing face-to-face with Reyes, Ashley told him that he had been disrespectful. Then Ashley turned around so that her back was to Reyes. At that point, Ashley alleges that Reyes took the following actions: First, Reyes "grabbed her from behind by the arm," ignoring Ashley's inquiry as to what he was doing. Next, Reyes "slammed her face forward onto the floor." Following that, Reyes handcuffed her. Finally, while she was on the floor, Reyes pressed his knee into Ashley's back.[3]

---

[1] The Complaint does not identify by name the security officer to whom Ashley spoke on the phone.

[2] The Complaint does not identify by name the security officer to whom Ashley identified herself, nor does it indicate whether that security officer was the same officer to whom Ashley spoke on the phone.

[3] At this point in the Complaint, Ashley alleges that "Reyes falsely complained that [she] had spit [sic] on him," but it is not evident when, to whom, or in what form Reyes made this complaint.

Reyes arrested Ashley upon two counts of Resisting an Officer with Violence under Fla. Stat. § 843.01 and one count of Disorderly Conduct under Fla. Stat. § 877.03. Following the arrest, Ashley was handcuffed and taken to Miami-Dade County jail, where she was subjected to criminal processing procedures including booking photos, fingerprinting, and detention. Ashley subsequently was released on bond.

Ashley alleges that prior to the date of the incident, Hialeah had received "numerous" complaints against Reyes as to "using excessive force, lying, and cheating." The Complaint lists six findings of misconduct and six corresponding disciplinary actions brought by Hialeah against Reyes between 2003 and 2009.[4] The alleged misconduct comprises three acts of "improper procedure," two of "conduct unbecoming," and one of "negligence." According to this data, Hialeah disciplined Reyes with one twenty-five hour suspension, one twenty hour suspension, two ten hour suspensions, and two written reprimands. Following the May 13, 2009 incident—the subject of the present case—Ashley filed an internal affairs complaint with the Hialeah Police Department against Reyes. On October 26, 2009, the Hialeah Chief of Police filed a report in response to Ashley's internal affairs complaint. In that report, the Chief of Police sustained Ashley's complaint, found that Reyes "abused his authority," found that "the evidence and facts do not support [Reyes'] version of the incident," and expressed concern regarding "the seriousness of the reported violations and the officer's past history of disciplinary issues." The excerpt of the report cited in the Complaint concludes with the Chief of Police's recommendation that Reyes "be terminated from his employment with the City." Hialeah subsequently terminated Reyes' employment.

## II.   ANALYSIS

### A.   Burden of Proof

Hialeah moves to dismiss Counts III, IV, V, and VI of Ashley's Complaint. Dismissal is proper if a complaint fails to show "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). The Court must accept as true all

---

[4]   Ashley's Complaint does not include the dates of Reyes' misconduct, but lists an internal affairs case number for each incident. These numbers appear to take the form of "(last two digits of the year)-(case number)," for example, "03-53," and "06-27."

3

factual allegations made in the complaint, but need not give the same deference to legal conclusions therein. *Id.* at 555; *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

### B. Count III

In Count III, Ashley alleges that Hialeah is liable for false arrest under Florida law. Hialeah moves to dismiss Count III, asserting that Ashley's false arrest claim fails as a matter of law because (1) it is barred by Florida's sovereign immunity statute, Fla. Stat. § 768.28(9)(a), and (2) there was probable cause for the arrest. In Florida, false arrest and false imprisonment are the same cause of action. *Rankin v. Evans*, 133 F.3d 1425 (11th Cir. 1998). The tort of false imprisonment in Florida "is defined as the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and the deprivation of his liberty." *Johnson v. Barnes & Noble Booksellers, Inc.*, 437 F.3d 1112 (11th Cir. 2006) (internal quotations omitted). For the reasons discussed below, the Court denies Hialeah's Motion as to Count III.

#### *1. Sovereign Immunity*

Hialeah argues that Ashley's state law false arrest claim fails as a matter of law due to Fla. Stat. § 768.28(9)(a), which bars state liability for any act by an officer committed "with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."[5] In Count I, Ashley alleges that Reyes committed "wanton, malicious, and oppressive" acts. (Compl. ¶ 48.) Hialeah argues that, because of this allegation, sovereign immunity bars its liability for the false arrest alleged in Count III. Ashley responds that dismissal is improper because her allegation regarding malice is not incorporated into Count III, making it an alternative, hypothetical, or inconsistent pleading permitted by Fed. R. Civ. P. 8(d). The Court finds that the pleadings do not establish that sovereign immunity, as a matter of law, bars liability.

---

[5] "The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a).

Hialeah directs the Court to *Fletcher v. City of Miami,* 567 F. Supp. 2d 1389 (S.D. Fla. 2008) and *Bakri v. City of Daytona*, No. 6:08-cv-1572-Orl-28GJK, 2009 WL 1587165 (M.D. Fla. June 5, 2009). In *Fletcher*, the court dismissed a false arrest claim under § 768.28(9)(a) because the complaint's general allegations stated that officers of the City of Miami had committed "willful, wanton, and malicious" acts. 567 F. Supp. 2d at 1394. In *Bakri*, a district court ruled similarly when the plaintiff pled within each count that "individual municipal agents acted maliciously . . . ." 2009 WL 1587165, at *1 (citing *Willis v. Dade County Sch. Bd.,* 411 So. 2d 245, 246 (Fla. 3d DCA 1982)). Both *Fletcher* and *Bakri* are patently inapposite. While Ashley alleges in Count I that Reyes committed "wanton, malicious, and oppressive" acts, she does not incorporate that allegation into Count III. Hialeah does not cite to any authority suggesting that such pleading in the alternative is inappropriate in this situation. No specific words or formulae are required to plead in the alternative, but plaintiffs "must use a formulation from which it can be reasonably inferred" that they are pleading in the alternative. *Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000)). Here, the Court can reasonably infer that Ashley intended to plead in the alternative because she does not incorporate the allegations of Count I into Count III. Thus, the Court finds that Count III properly is an alternative, hypothetical, or inconsistent pleading, as permitted by Fed. R. Civ. P. 8(d).[6]

---

[6] Hialeah does not assert that Reyes' actions, as alleged in the Complaint, are so obviously with malicious purpose and without regard for Ashley's rights that, as a matter of law, the Complaint fails to state a claim for false arrest. Dismissal of a claim against a governmental entity is proper under § 768.28(9)(a) when the facts alleged by a plaintiff demonstrate, as a matter of law, that a law enforcement officer acted "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *See Dukes v. Miami-Dade County*, Case No: 05-22665-CIV-HUCK/SIMONTON, 2006 U.S. Dist. LEXIS 97041, at *7–8 (S.D. Fla. July 5, 2006) (dismissing an excessive force claim against a county based on Florida's sovereign immunity statute when alleged facts of the arrest could "not be characterized as anything but" malicious or wanton and willful), *aff'd in relevant part*, 232 Fed App'x 907 (11th Cir. 2007). In Count III, Ashley alleges that Reyes, without justification, "grabbed [Ashley] from behind by the arm," "slammed her face forward onto the floor," and, while handcuffing Ashley, "pressed his knee into her back" (Compl. ¶¶ 32–35). The Court finds that such facts are not sufficient to conclude as a matter of law that Reyes acted "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). Further discovery may reveal that such a legal conclusion is indeed warranted. Thus, the Court may address this issue on summary judgment. Regardless, Hialeah does not raise such an argument at this stage.

### 2. *Probable Cause*

Hialeah also asserts that Ashley's claim of false arrest fails because there was probable cause for Reyes to arrest Ashley. The Court cannot identify a basis for this argument from the facts alleged in the Complaint. Where there is probable cause for arrest by an officer of the law, the arrested individual cannot succeed in a claim of false arrest. *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996). Hialeah contends that Ashley's false arrest claim should be dismissed because "probable cause is a fluid concept." *City of St. Petersburg v. Austrino*, 898 So. 2d 955, 957 (Fla. 2d DCA 2005), *review denied*, 911 So. 2d 97 (Fla. 2005). Hialeah argues that Reyes had probable cause to arrest Ashley because she spoke back to Reyes and turned her back on him. (Def.'s Mot. to Dismiss Compl. at 7.) Specifically, Hialeah contends that "[i]t is entirely possible that Officer Reyes interpreted [Ashley]'s behavior as threatening . . . ." Hialeah's argument is without merit. *Austrino*, the case cited by Hialeah, holds that a finding of probable cause for arrest requires that "[t]he facts and circumstances . . . must be such that 'would cause a prudent person to believe' the suspect has committed a crime." *Id.* (quoting *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir.1995)). It is well-established that the existence of probable cause is an objective analysis, not a subjective analysis, as Hialeah's argument suggests; Reyes' subjective belief is superfluous to this analysis. Hialeah also does not cite to case law analogous to the instant situation. The mere fact that Ashley criticized Reyes' behavior would not cause a prudent person to believe that Ashley had committed an arrestable offense. Accordingly, Hialeah does not establish the existence of probable cause based on the facts alleged in the Complaint. Because the Court finds that, as pled, there is no sovereign immunity bar to Ashley's false arrest claim and that the facts, as alleged in the Complaint, do not establish the existence of probable cause, the Court denies Hialeah's Motion as to Count III.

### C. Count IV

In Count IV, Ashley alleges that Hialeah is liable under 42 U.S.C. § 1983 for negligently hiring and retaining Reyes. Hialeah moves to dismiss on the grounds that Count IV fails to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). Ashley alleges two grounds for Hialeah's liability under § 1983: negligent hiring and negligent retention. Ashley alleges that in hiring and retaining Reyes, Hialeah was "deliberately indifferent to the risk" that Reyes would

violate her constitutional rights to free speech and protection from unlawful searches and seizures. (Compl. ¶¶ 79–81.)  As to negligent hiring, Ashley states that "Hialeah failed to adequately scrutinize [Reyes'] background," but does not plead any facts in support of this claim. (Compl. ¶ 79.)  Thus, Ashley fails to allege any facts on the face of the Complaint supporting a plausible claim for negligent hiring.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (discussing plausibility requirement).  However, Ashley states a facially plausible negligent retention claim pursuant to § 1983.  Therefore, for the reasons stated below, the Court denies Hialeah's Motion to Dismiss as to Count IV.

A local government is liable for civil rights violations committed by a person acting "under color of any statute, ordinance, regulation, [or] custom."[7]  *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690 (1978).[8]  However, § 1983 does not allow for municipal liability based on a theory of *respondeat superior*. *Id.* at 691.  Rather, a municipality only is liable for injury

---

[7]     42 U.S.C. § 1983.  The complete text of 42 U.S.C. § 1983 reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

[8]     Although Reyes was off-duty at the time of the incident, Hialeah does not raise an issue regarding whether Reyes' actions were under color of his authority as a police officer or were outside the scope of his authority.  For the purposes of Count IV, it is sufficient that Ashley has alleged facts suggesting the existence of an unofficial policy or custom.  In analogous situations Florida and other states have held that police officers who serve as off-duty security officers act within the scope of their police duties when attempting arrests while off-duty.  *See State v. Hartzog*, 575 So. 2d 1328, 1331 (Fla. Dist. Ct. App. 1987) (finding that a defendant properly could be convicted of "battery of a law enforcement officer" when a police officer, while acting as an off-duty security officer, identified himself as a police officer prior to the defendant's assault); *State v. Phillips*, 520 S.E.2d 670, 681 (W.Va. 1999) (noting that many jurisdictions, including Florida, "have concluded . . . that police officers moonlighting for private employers as security guards or similar peacekeepers are engaged in official duties for purposes of officer assault statutes or statutes defining aggravated circumstances when, during the course of such secondary employment, they react to incidents of what may be criminal or disorderly conduct").

caused by an employee when a "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694. To confer liability, such policies and customs must be "so permanent and well settled" as to have "the force of law." *Id.* at 691. In addition, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397 (1997).

Citing *Gilmere v. City of Atlanta*, Hialeah argues that the Court should dismiss Count IV because isolated violations of civil rights, even when attributable to a municipality, do not constitute a municipal policy or custom. 737 F.2d 894, 904 (11th Cir. 1984), *aff'd en banc on different grounds*, 774 F.2d 1495 (11th Cir. 1985). Hialeah's reliance on *Gilmere* in support of its motion to dismiss is problematic because Hialeah relies on the vacated Eleventh Circuit panel opinion in that case to define the standard for municipal liability under § 1983. The controlling, en banc opinion in *Gilmere* expressly rejected the panel's decision to articulate a rule for municipal liability, the rule cited by Hialeah. *See Gilmere*, 774 F.2d at 1503–04 ("We find it unnecessary at this time to state the rule to be followed by this circuit . . . ."). Putting aside Hialeah's citation to overruled law, Ashley does not allege merely an isolated violation of civil rights by Reyes, as Hialeah characterizes it. Instead, Ashley alleges that Reyes committed six acts of professional misconduct and that Hialeah's retention of him after each instance amounts to an unofficial policy and custom of the City that led to the violation of Ashley's civil rights. Because the Complaint does not describe Reyes' misconduct in detail, the Court cannot ascertain whether any or all of these actions involved the deprivation of an individual's constitutional rights, or made Hialeah aware of Reyes' likeliness to act in a way that would deprive a person of her rights. However, the Complaint alleges that Hialeah considered Reyes' prior misconduct significant in its decision to terminate Reyes for the May 13, 2009 incident. At the very least, Hialeah's § 1983 liability is plausible based on Ashley's allegations. Discovery will reveal evidence regarding Hialeah's alleged negligence. Therefore, dismissal of Count IV for failure to state a claim would be premature.

Hialeah also seeks support in a recent district court decision dismissing a § 1983 claim against a municipality. *Perez v. City of Miami*, 2011 WL 772858, *4 (S.D. Fla. Feb. 2, 2011). In

*Perez*, the complaint failed even to allege that a municipal policy violated plaintiff's constitutional rights, whereas here, Ashley has alleged just that; subsequent discovery may or may not support that allegation. Because Ashley has alleged facts that support the plausible existence of a municipal policy or custom leading to a deprivation of constitutional rights, the Court allows the cause to proceed to further discovery. Accordingly, Court denies Hialeah's Motion as to Count IV.

    **D.**    **Count V**

Hialeah asserts that Ashley fails to state a claim for negligent hiring and retention under Florida law. *See* Fed. R. Civ. P. 12(b)(6). Specifically, Hialeah asserts essentially that Ashley must have provided Hialeah with an opportunity to take corrective action in response to Reyes' actions. Hialeah contends that it did so by terminating Reyes' employment. For the most part, Ashley's state law negligent hiring and retention claim in Count V reproduces the allegations of the correlating § 1983 claim in Count IV (and, redundantly, incorporates these same paragraphs by reference). However, these causes of action differ legally. Under the federal cause of action, an employer is liable for negligent hiring and retention when the employer's policy or custom caused the deprivation of an individual's civil rights. *Monell*, 436 U.S. at 690. On the other hand, an employer is generally liable for negligent hiring and retention under Florida law when the employer breaches a duty of reasonable care to protect a foreseeable plaintiff from particular harm by an employee who the employer knows or should know is dangerous. *See, e.g.*, Mallory *v. O'Neill*, 69 So. 2d 313, 315 (Fla. 1954) (adopting *Restatement (First) of Torts* § 317 (1934)); *Garcia v. Duffy*, 492 So. 2d 435 (Fla. 2d DCA 1986). Contrary to Hialeah's assertions, there is no requirement that a municipality have the opportunity to take corrective action following a constitutionally-violative act by an employee; the notice that is required is notice of the employee's propensity to commit such an act. As alleged, Hialeah received such notice here. For the reasons stated below, the Court denies Hialeah's Motion as to Count V.

Ashley alleges that Hialeah knew or reasonably should have known that Reyes was dangerous or unfit for employment as a police officer. Under Florida law, "[t]he principal difference between negligent hiring and negligent retention as bases for employer liability is the time at which the employer is charged with knowledge of the employee's unfitness." *Garcia*, 492 So. 2d at 438.

Negligent hiring occurs when the employer knew or should have known of the employee's dangerousness or unfitness before hiring him. *Id.* Ashley pleads that Hialeah did not take reasonable steps to ascertain Reyes' fitness to serve as an arresting officer prior to hiring him. (Compl. ¶¶ 73, 86.) The Complaint provides no factual support for this proposition. Ashley's sole allegation as to hiring is that "Hialeah was responsible for implementing the rules and regulations in regard to hiring." (Compl. ¶ 69, *readopted in* ¶ 85). No plausible construction of the facts alleged in Count V supports a negligent hiring claim. Based on the dearth of facts as to hiring, it appears to the Court that Ashley does not intend to prove that claim, but refers to the aggregated "negligent hiring and retention" in title alone, which is a common practice.[9]

In contrast to negligent hiring, negligent retention occurs when, during the course of employment, an employer becomes aware, or should have become aware, of an employee's unfitness "and the employer fails to take further action such as investigating, discharge, or reassignment." *Garcia*, 492 So. 2d at 438–39; *see also Watson*, 552 So. 2d at 1148 n.2 ("The claim for negligent retention is not dependent upon a negligent hiring."). Ashley alleges that "Hialeah received actual notice of the dangerous and incompetent propensities of Reyes as a result of his conduct for which he was sanctioned by Hialeah, and based on information and belief, from other persons including police officers of Hialeah." (Compl. ¶¶ 74, 87.) In support of this allegation, Ashley notes that Hialeah sanctioned Reyes six times prior to the date of the incident with Ashley, including suspensions of twenty, ten, and twenty-five hours, respectively, for three counts of "Improper Procedure;" one ten hour suspension and one written reprimand for two counts of "Conduct Unbecoming;" and an additional written reprimand for one count of "Negligence." (Compl. ¶ 71, *readopted in* ¶ 85.) The Complaint also quotes an alleged report by the Hialeah Chief of Police recommending Reyes' termination for the incident with Ashley "[d]ue to the seriousness of the reported violations and the officer's past history of disciplinary issues." (Compl. ¶¶ 76–78 *readopted in* ¶ 85.) Ashley alleges that "Reyes's employment was subsequently terminated with Hialeah." (Compl. ¶ 77 *readopted in* ¶ 85.)

---

[9] Although the elements of "negligent hiring" and "negligent retention" are not identical, a plaintiff may bring a cause of action for "negligent hiring and retention" against an employer who may be liable for only one of those charges. *See generally Garcia*, 492 So. 2d 435.

Hialeah does not deny having actual notice of the problems with Reyes, but argues that the foregoing facts support dismissal because, upon acquiring such notice, the City "actively disciplined and terminated him." (Def.'s Mot. to Dismiss Compl. at 4.) The Court disagrees with Hialeah because the Complaint does not provide information sufficient to conclude that Hialeah adequately disciplined Reyes or took corrective action for his prior acts. Furthermore, Hialeah's termination of Reyes subsequent to the incident with Ashley is irrelevant to the City's liability for negligent retention, because facts regarding termination of an employee go to the duty and breach elements of Ashley's negligence claim, which necessarily must precede the wrongful conduct. *Garcia*, 492 So. 2d at 441. Put simply, the fact that Hialeah terminated Reyes after the incident with Ashley cannot cure the fact that Hialeah allegedly improperly retained Reyes before the incident with Ashley. The facts alleged in the Complaint, taken as true, support a plausible finding that Reyes posed a danger to others and that Hialeah knew this fact. Accordingly, the Court denies Hialeah's Motion as to Count V.

### E. Count VI

In Count VI, Ashley claims that Hialeah is liable for Reyes' use of negligent excessive and unreasonable force while arresting Ashley. Hialeah moves to dismiss Count VI because there is no cause of action for negligent use of force in Florida. *See Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1294 (11th Cir. 2009). This is because the use of force is an intentional tort, and "it is inapposite to allege the negligent commission of an intentional tort." *Id*. In response to Hialeah's Motion to Dismiss, Ashley acknowledges that dismissal as to Count VI is proper and requests permission to amend her Complaint accordingly. At a hearing on July 26, 2011, Ashley's counsel clarified that Ashley was voluntarily dismissing Count V. Accordingly, the Court grants Hialeah's Motion as to Count VI.

### III. CONCLUSION

For the preceding reasons, the Court GRANTS IN PART and DENIES IN PART Hialeah's Motion to Dismiss. Specifically, the Court GRANTS the Motion as to Count VI, and DENIES the

Motion as to Counts III, IV, and V.  Hialeah should file its answer to the Complaint by August 1, 2011.

DONE and ORDERED in Chambers, Miami, Florida, on July 28, 2011.

*signature*

Paul C. Huck
United States District Judge

<u>Copies furnished to</u>:
Counsel of Record